1  J. JAMES LI (SBN 202855)
   *lij@gtlaw.com*
2  DAVID J. PEREZ (SBN 238136)
   *perezdj@gtlaw.com*
3  GREENBERG TRAURIG, LLP
   1900 University Avenue, Fifth Floor
4  East Palo Alto, CA 94303
   Telephone: (650) 328-8500
5  Facsimile: (650) 328-8508

6  MARK L. HOGGE (*Pro Hac Vice*)
   *hoggem@gtlaw.com*
7  SHAILENDRA K. MAHESHWARI (*Pro Hac Vice*)
   *maheshwaris@gtlaw.com*
8  GREENBERG TRAURIG, LLP
   2101 L Street, N. W., Suite 1000
9  Washington, D.C. 20037
   Telephone: (202) 331-3100
10 Facsimile: (202) 331-3101

11

12 Attorneys for Defendant and Counterclaimant
   ATRUA TECHNOLOGIES, INC.

13

14                UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA

15                                    SAN FRANCISCO DIVISION

16

17 AUTHENTEC, INC., a Delaware              Case No.   C 08-1423 PJH
   Corporation,
18                                          **MOTION FOR ENTRY OF PROTECTIVE
                   Plaintiff;               ORDER AND TO COMPEL PRODUCTION OF
19                                          SOURCE CODE**
   v.
20                                          Noticed Date: October 1, 2008
   ATRUA TECHNOLOGIES, INC., a              Requested Date:   September 10, 2008
21 California Corporation,                  Time:      9:00 a.m.
                                            Dept.      3
22                 Defendant.               Judge:     Hon. Phyllis J. Hamilton

23 ATRUA TECHNOLOGIES, INC., a
   California Corporation,
24
                   Counterclaimant,
25
   v.
26 AUTHENTEC, INC., a Delaware
   Corporation,
27
                   CounterDefandant
28
                                                                    Case No. C 08-1423 PJH
   MOTION FOR ENTRY OF PROTECTIVE ORDER AND TO COMPEL PRODUCTION OF SOURCE CODE

   371,673,706v5371,673,706v5

1  TO PLAINTIFF AND COUNTERDEFENDANT, ITS ATTORNEYS OF RECORD
2  AND TO THIS COURT:

3  **PLEASE TAKE NOTICE THAT** on October 1, 2008, at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 3 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant and Counterclaimant Atrua Technologies, Inc. ("Atrua") will move this Court to enter a protective order and to compel Plaintiff and CounterDefendant AuthenTec, Inc. ("AuthenTec") to produce its source code to Atrua under the terms of the protective order.

Further, concurrent to filing this Motion, Atrua also requests that the Court expedite the Motion under Civ. L.R. 6-3(d) so that the Motion will be heard on September 10. *See* Atrua's Administrative Motion to Shorten Time and associated proposed Order for the proposed briefing schedule.

This Motion is brought pursuant to Federal Rule of Civil Procedure 26(c), and Civil Local Rule 7-1, and is based on this Notice, the Memorandum of Points and Authorities, the Declaration of J. James Li, the exhibits thereto, the proposed Order served concurrently with this Motion, the [Proposed] Protective Order served concurrently with this Motion, and any oral or documentary evidence adduced at the hearing on this matter.

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Atrua hereby certifies that it has met and conferred with AuthenTec in a good faith effort to resolve this issue without court action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This case was filed more than five months ago. The parties already have started producing documents and exchanged their infringement contentions under Pat. L.R. 3-1. There is, however, still no protective order ("PO") in place for protecting confidential information and no source code have been produced because the major issue that holds up the PO is how to protect source codes.

In Atrua's view, the conventional protective provision that designates source code as "Highly Confidential—Outside Counsel's Eyes Only" should be sufficient for source code protection. AuthenTec, however, wants an overly stringent and burdensome provision that basically requires Atrua to go to AuthenTec counsel's office to review the source code with a 48-hour advanced notice. To accommodate AuthenTec's demand, Atrua has proposed a compromise that includes many additional protective terms for source code, including requiring the lock of the produced code in a safe, limiting to one copy of the produced source code on one computer, reporting to opposing counsel the make, model, serial number, and custodian of the computer, irreversibly erasing the code from the computer at the end of the case, and the filing of a declaration by counsel to avow their compliance with the source code protection provision. AuthenTec, however, still insists on its own proposal. Because of the impasse on this issue, and because of Atrua's urgent need to review AuthenTec's source code, Atrua files the instant motion to request that the Court enter a PO as proposed by Atrua and compel AuthenTec to produce its source code under the terms of the PO.

As discussed in detail below, the balancing test in this case clearly favors Atrua's position. On one hand, there is no reasonable dispute that Atrua's proposed PO provides more than adequate protection of the confidentiality of source codes. It is also indisputable that it is no burden for AuthenTec to copy the source code onto a disk for the production. In contrast, AuthenTec's ultra restrictive proposal would be overly burdensome for Atrua and severely hinder Atrua's case preparation. The source code at issue has more than 100 gigabits of information. Atrua's counsel has to spend countless hours to search, analyze, and even compile parts of the codes in order to collect infringement evidence. Having to review the code in the opposing counsel's office would be overly burdensome for Atrua. Further, the method of searching and compiling the code and the selection of

parts of the code for printing will inevitably reveal Atrua's attorney work product, especially considering that AuthenTec's proposal requires Atrua's counsel to submit to AuthenTec all the codes it printed for inspection and stamping. AuthenTec's proposal is nothing but a thinly veiled attempt to interfere with Atrua's case preparation.

A minor issue involving the PO is whether documents designated as "confidential" should be accessed by the parties. AuthenTec wants to limit the access to such documents to in-house counsel only. This again is an attempt to inconvenience Atrua. Unlike AuthenTec, Atrua has no in-house legal counsel. Thus, under AuthenTec's proposal, Atrua's management will have no access to confidential documents that have no competitive value. In contrast, Atrua's proposal, which is a normal practice across the nation, does not in any way inconvenience AuthenTec. Anything that should be shielded from Atrua's management for potential competitive injury can be designated as Outside Counsel's Eye's Only. If a document cannot be justified to be limited to the outside counsel (i.e., for lack of potential competitive injury), it cannot be justified to be shielded from Atrua's management, either.

For these reasons, this Court should enter the PO proposed by Atrua and compel AuthenTec to produce its source code under the terms of the PO.

## II. FACT STATEMENT

### A. The Parties' Dispute over the Provision on Source Code Protection

Since July 2008, the parties have been trying to agree on a PO for protecting confidential documents to be produced in this case. (Li Decl.[1], ¶ 3). The parties initially agreed to a format for electronic production under which the source codes will be produced in their native electronic format. (*Id.*, ¶ 4). AuthenTec's counsel was supposed to prepare the first draft of the proposed PO but did not complete the task until August 5, 2008. (*Id.*, ¶ 3, Ex. A). AuthenTec never mentioned the restrictive provision until it provided Atrua with its draft PO. (*Id.*, ¶ 4). To Atrua's surprise, AuthenTec included in this initial draft a provision that severely limits Atrua's counsel's access to source code. (*Id.*, ¶ 3, Ex. A and ¶ 4). Under AuthenTec's provision, a producing party's source code is only

---

[1] Declaration of J. James Li in Support of Motion for Entry of Protective Order and to Compel Production of Source Code ("Li. Decl.")

accessible to the receiving party at the producing party's office or a mutually-agreed location on a producing party's computer. (*Id.*, ¶ 3, Ex. A, at Sec. 7(b)). The receiving party is also required to provide a 48-hour advanced notice every time it wants to review the source code. (*Id.* at Sec. 7(c)). If the receiving party wants to print a certain part of the source code, it must submit the printed code to the producing counsel for inspection and bates labeling. (*Id.* at Sec. 7(d)(i)).

The parties had a lengthy meet and confer regarding the source code provision. (Li Decl., ¶¶ 3-7). During the meet and confer, counsel for AuthenTec informed Atrua that AuthenTec's source code is in excess of 100 gigabits in electronic volume. (*Id.*, ¶ 5). Subsequently, Atrua provided AuthenTec with its version of the proposed PO that included the following source code provision:

> A Party's source code is presumed to be designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY. To facilitate the review of source code, the parties agree to the following procedure to ensure the necessary protections for each Party's source code:
>
> (a) Source code shall be produced on a flash memory drive or external hard drive (the "Drive"), hand delivered in a sealed envelope to the Office for the Receiving Party's counsel of record. The Drive shall be labeled "SOURCE CODE: HIGHLY CONFIDENTIAL—ATTORNEY'S EYES ONLY" and with an appropriate production number.
>
> (b) Upon receiving the Drive, the counsel of record of the Receiving Party shall immediately store it in a company safe of the counsel's firm and may take the drive out of the safe only for the purpose of uploading the source code onto a computer.
>
> (c) The source code may be uploaded to one laptop computer (the "Computer"). The make, model, serial number, and custodian of the Computer shall be provided to the Producing Party in writing within 3 days of the uploading. Other than the authorized uploading, no additional copies of the source code may be made without a written authorization of the Producing Party. The Receiving Party's counsel should exercise utmost diligence to safeguard the Computer and limit its access according to Section 5 above.
>
> (d) The Drive shall be kept in a company safe of the Receiving Party's counsel of record until the end of the case and returned to the Producing Party's counsel of record by hand delivery in a sealed envelope at the end of the case. At the end of the case, the source code uploaded onto the Computer should be irreversibly erased, including its elimination from the "Waste Basket" or "Recycle Bin" (or any equivalent folder for deleted files) of the computer.
>
> (e) The Receiving Party's counsel of record shall file a Declaration of Compliance with Protective Order under oath before this Court within 10 days of the return and deletion of the source code at the end of the case, expressly stating the compliance with subsection (b) through (d).

(Li Decl., ¶ 6, Ex. B at Sec. 7). This provision is preserved in Atrua's proposed PO submitted to the Court with minor revisions. (See [Proposed] Protective Order, filed concurrently herewith, at Sec. 7).

In response to Atrua's proposed PO, AuthenTec suggested that the Parties delete the source code protection provision altogether from the proposed PO and that the Parties would later enter a separate agreement on source code protection. (Li Decl., ¶ 7). Atrua rejected the proposal. (*Id.*)

### B. The Parties' Dispute over the Scope of Disclosure for "Confidential" Information

Other than the difference in the source code protection clause, the parties also disagree on the permitted disclosures of materials designated as "CONFIDENTIAL." (Li Decl., ¶ 9). The proposed PO has two tiers of confidentiality designation: (1) confidential and (2) highly confidential-outside counsel's eyes only. (See [Proposed] Protective Order, filed concurrently herewith, at Sections 2.7 and 2.8). AuthenTec insists that the materials designed as "confidential" must be limited to in-house counsel of the parties. (Li Decl., ¶ 9). The parties have been unable to reach an agreement on this issue. (*Id.*, ¶ 9).

As discussed below, while Atrua's proposal adequately protects both parties' interests, AuthenTec's is designed to burden Atrua and to interfere with Atrua's case preparation. For that reason, Atrua's proposed PO should be entered.

## III. ARGUMENT

Pursuant to Federal Rule of Civil Procedure, "for good cause," a protective order may be issued "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

The parties have agreed here that "good cause" exists to grant a PO for protecting confidential information, but disagree on two specific provisions of the proposed PO.

### A. The Source Code Provision Proposed by Atrua More Than Adequately Protects the Confidentiality of the Code

Atrua's proposed PO has the usual protective terms for all materials designed by the producing party as "Highly Confidential—Outside Counsel's Eyes Only." (the "HC Designation"). Documents under the HC Designation can only be accessed by the receiving party's outside counsel and experts approved by the producing party. (See [Proposed] Protective Order, filed concurrently herewith, at Sec. 5). The storage of such materials must be "under the direct control of outside

counsel of record .... who ... shall be responsible for preventing any disclosure of the material except in accordance with the terms of [the PO]." (*Id.* at Sec. 13). This is a widely used method for protecting the most confidential information produced in a litigation, including source code. (*See* Li Decl., ¶ 8); *see also, Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) (allowed production of source code under the "Outside Counsel's Eyes Only" designation and ordered the in-house counsel (who took over the case) to hire independent consultant to review the code).

Atrua considers this commonly used HC Designation an adequate protection for protection for source code in this case. The HC Designation places the trust on the outside counsel of record, who are officers of the court and have sworn to uphold the court's orders, including the PO at issue. Violation of the PO carries severe consequences for counsel, including civil and criminal contempt of court. Thus, Atrua certainly has no problem producing its own source code under the HC Designation. AuthenTec's paranoia is supported by nothing but a baseless distrust of the opposing counsel's integrity or their ability to fulfill their duty as officers of the court.

To accommodate AuthenTec's paranoia, however, Atrua has gone an extra mile by proposing a special provision for source code protection. Under Atrua's proposal, the receiving party's outside counsel receives a copy of the source code on a flash memory drive or external hard drive (the "Drive"). (*See* [Proposed] Protective Order, filed concurrently herewith, at Sec. 7(a)). The receiving counsel may only make one copy of the code onto one laptop computer and must lock the Drive in a firm safe until the end of the case. (*Id.* at Sec. 7(b) & (d)). The receiving counsel must report to the producing counsel the make, model, serial number, and custodian of the computer carrying the source code. (*Id.* at Sec. 7(c)). The receiving counsel must exercise "utmost diligence" to safeguard the computer and "limit its access" according to the protective terms for the HC Designation of the PO. (*Id.*) At the end of the case, the receiving counsel must return the Drive to the producing party and irreversibly erase the source code from the computer. (*Id.* at Sec. 7(d)). The receiving counsel is also required to file a declaration under oath at the end of the case to expressly avow the full compliance with the source code protection provision. (*Id.* at Sec. 7(e)). Therefore, there is more than sufficient safeguard for the source code produced under Atrua's proposed PO.

**B.   AuthenTec's Proposal Would Significantly Hinder Atrua's Trial Preparation and Impinge upon Atrua's Attorney Work Product**

Of the six patents at issue in this case, AuthenTec's five patents are primarily concerning hardware configurations while the patent that Atrua asserts under its counterclaims, U.S. Pat. No. 7,197,168, is primarily implemented by software. (Li Decl., ¶ 10). Thus, the unreasonable limitation on source code access that AuthenTec is attempting to introduce into the PO has its primary impact on Atrua. The real issue here is thus whether AuthenTec should be compelled to produce its source code under the protective terms proposed by Atrua.

To determine that issue, the court should apply the balancing test that the Nine Circuit has used for over a decade. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). On one hand, Atrua has the legitimate interest in obtaining free, ready and convenient access to the source code of AuthenTec to allow a proper discovery and trial preparation. On the other hand, AuthenTec should not be overburdened by producing the source code and its confidential information should be properly protected. This balancing test overwhelmingly favors producing the source code.

First, producing the source code is not a burden to AuthenTec, which takes probably less than an hour to copy the code onto a disk. AuthenTec's interest in protecting the confidentiality of the source code is also adequately addressed by the special source code provision of the proposed PO.

In contrast, if the source code can be accessed only according to AuthenTec's proposal, it would be an extreme burden for Atrua. Atrua would have to give a 48-hour advanced notice to AuthenTec every time it wants to access the source code. Atrua would have to go to AuthenTec counsel's office to read, search, and print out sections of the code using AuthenTec's computer and equipment. This will severely handicap Atrua's case preparation. With more than 100 GB of source code, it is anticipated that hundreds of hours will have to be spent by both Atrua's counsel and its expert witness to search, review, summarize, and even to compile parts of the code to test its functionality. (Li Decl., ¶ 11). Having to do all these tasks at AuthenTec's place and using AuthenTec's computer would severely hinder Atrua's case preparation.

///

///

In *Brown Bag*, the court's balancing test never questioned the necessity for the defendant to produce the source code to the plaintiff for unfettered access by its outside counsel; in fact, all the source codes in that case were indeed produced under the "Outside Counsel's Eyes' Only" designation. *Brown Bag Software*, 960 F.2d at 1469, 1470. The court in *Brown Bag* merely ordered that the plaintiff hire independent consultants to review the produced trade secrets including source codes because of the danger of the in-house counsel's inevitable use of the trade secrets in his employment. *Id.* at 1471. There is no contention in this case that Atrua's outside counsel will somehow use the source code for business advantage. In fact, AuthenTec readily agrees that Atrua's outside counsel may directly review the code, albeit may do so only with unrealistic strictures it attempts to put in place. Thus, the balancing test under *Brown Bag* favors Atrua's position.

Furthermore, not only is AuthenTec's proposal unworkable for Atrua, it also would lead to disclosure of Atrua's attorney work product. The work product doctrine protects trial preparation materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews. Fed. R. Civ. Proc. 26(b)(3); *see Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Work product protection is designed to preserve the privacy of attorneys' thought processes, and to prevent parties from "borrowing the wits of their adversaries." *Hickman v. Taylor, supra,* 329 U.S. at 511; *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992); *United States ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 559 (C.D. CA 2003). When the work product reflects the attorneys' mental impressions, conclusions, opinions or legal theories, the protection is much greater than for other work product and may not be affected by a showing of good cause. *Upjohn v. United States*, 449 U.S. 383, 399 (1981)

Review of AuthenTec's source code at AuthenTec's counsel's office and using an AuthenTec's computer will potentially lead to disclosure of Atrua's attorney work product. All the searches and functional compilations that the Atrua's counsel conducts are viewable by AuthenTec after counsel leaves. Furthermore, AuthenTec's proposal also requires that all the pages selected for printing be reviewed by AuthenTec's counsel. (*See* Li Decl., ¶ 3, Ex. A, at Sec. 7(d)(1)). This restriction will inevitably disclose counsel's mental impression, case preparation, and trial plans in terms of the selection of the source code evidence. Therefore, requiring Atrua's counsel to review

the source code in AuthenTec's counsel's office is not only overly burdensome, but it would also impinge on Atrua's attorney work product. Thus, under the balancing test, this Court should adopt Atrua's proposed PO and order AuthenTec to produce its source code under the PO.

### C. AuthenTec's Refusal To Allow Dissemination Of "CONFIDENTIAL" Information To The Parties Is Unreasonable And Prejudicial To Atrua

Other than the dispute over the source code protection provision, the parties also disagree on the scope of the permitted disclosure for documents designed as "CONFIDENTIAL." (the "C Document"). Conforming to the common practice, Atrua would like the documents under the C Designation to be accessible by the parties' management for the sole purpose of preparing the case. (*See* Li Decl., ¶ 6, Ex. B, and ¶ 9). Atrua, however, wants to limit the C Designation to in-house counsel. (*Id.*, ¶ 9)

Like the source code provision, AuthenTec's proposed limitation on the C Designation is designed to inconvenience Atrua. Unlike AuthenTec, which is a public company with permanent in-house counsel, Atrua is a small start-up having no in-house legal staff. (*Id.*, ¶ 9). Thus, AuthenTec's proposal will only interfere and burden Atrua, just as its source code provision.

More importantly, there is no justification for AuthenTec's over-restrictive proposal.

The C Designation is not designed for protecting sensitive trade secrets or other information of competitive values that may be used competitors. Those kinds of information, such as source code, are protected by the HC Designation. Thus the C documents are designed to protect privacy and non trade secrets information that are less likely to be used by a competitor, especially subconsciously as discussed in *Brown Bag*. If a document contains trade secrets or other information that a competitor may use to its advantage, AuthenTec is free to designate the document under the HC Designation to preclude access by Atrua's employees. If a document, though confidential, does not contain competitive information and thus cannot be justified to be placed under the HC Designation, it cannot be shielded from Atrua's management who would access such information for the sole purpose of managing the litigation and are subject to civil and criminal contempt for violating the PO. Again, the balancing test heavily favors Atrua's position.

///

### D. AuthenTec Should Be Compelled To Produce Its Source Code Under The Proposed PO

The issue of the PO, and AuthenTec's unreasonable demands, have been the only issue delaying the production of source codes. As such, this Court, upon entering the proposed PO, attached hereto, should issue an order compelling AuthenTec to produce its source code within ten (10) days of the Order.

## IV. CONCLUSION

For the foregoing reasons, and for good cause shown, Atrua requests that the Court, pursuant to Federal Rule of Civil Procedure 26(c), approve its proposed PO and order AuthenTec to produce its source code within 10 days of the issuance of the PO.

Dated: August 21, 2008                    GREENBERG TRAURIG, LLP


                                          By:_____/s/_____
                                             J. James Li

                                          Attorneys for Defendant and CounterClaimant
                                          ATRUA TECHNOLOGIES, INC.